UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KRISTIE LYN HENDRICKS DAVIS,

                    Plaintiff,

v.                                                  1:16-CV-1074
                                                    (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

Kristie Lyn Hendricks Davis                 PRO SE
6 Leghorn Rd.
Kerhonkson, NY 12446

U.S. SOCIAL SECURITY ADMIN.                 PETER W. JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 15.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Kristie Lyn

Hendricks Davis ("Plaintiff") against the Commissioner of Social Security ("Defendant"

or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set

forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1974.  (T. 124.)  She completed high school and one year of college.  (T. 265.)  Generally, Plaintiff's alleged disability consists of degenerative disc disease, arthritis, herniated discs, and fibromyalgia.  (T. 124.)  Her alleged disability onset date is Mary 13, 2011.  (T. 124.)  Her date last insured is December 31, 2016.  (T. 124.)  She previously worked as a case worker and customer service clerk.  (T. 34, 265.)

### B.    Procedural History

On November 8, 2010, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 123.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On August 14, 2014 and again on October 10, 2014, Plaintiff appeared before the ALJ, Robert Gonzalez.  (T. 45-75, 76-122.)   On February 19, 2015, ALJ Gonzalez issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 22-41.)  On May 27, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 7-12.)  Plaintiff was represented by counsel at both hearings and in filing her request for review with the AC.  Thereafter, Plaintiff proceeded *pro se* and timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 27-35.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since May 13, 2011. (T. 27.) Second, the ALJ found that Plaintiff had the severe impairments of lordosis with degenerative disc disease and disc herniation of the cervical spine; fibromyalgia; cervicalgia; status post lumbar and cervical discectomy; lumbar facet syndrome; post laminectomy syndrome; bilateral carpal tunnel syndrome; obesity; asthma; heel spur; and plantar fasciitis. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 29.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with additional limitations. (*Id.*)[1] The ALJ determined Plaintiff should avoid concentrated exposure to dust fumes and noxious gases; she should avoid working at unprotected heights; she could occasionally stoop, crouch, push, and pull bilaterally; she was limited to no more than occasionally climbing stairs; she was limited to no more than frequent handling and fingering with her bilateral upper extremities; she was limited to no more than frequent flexing, extension, and rotation of her neck; she required the option to alternate between sitting and standing at will; and she must use a cane to ambulate. (*Id.*) Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work. (T. 34.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1]      Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ erred in interpreting the medical evidence of record.  (Dkt. No. 11 at 3-4 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ ignored evidence provided by the treating physician and erred in failing to give appropriate weight to the opinions of the treating physician and the medical evidence. (*Id.* at 4.)  Third, and lastly, Plaintiff argues the ALJ erred in failing to give specific reasons for discrediting Plaintiff's testimony.  (*Id.* at 4-5.)

### B. Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the RFC finding was supported by substantial evidence.  (Dkt. No. 12 at 4-10 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ's credibility finding was proper.  (*Id.* at 10.) Third, and lastly, Defendant argues the ALJ's step four finding was supported by substantial evidence.  (*Id.* at 10-11.)

## III.  RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order and in a consolidated manner.

### A.    Weighing of Medical Evidence

The Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. § 404.1527(c)[2]. " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v.*

---

[2]    Effective March 27, 2017, 20 C.F.R. § 404.1527 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

*Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' "  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' "  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' "  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

Plaintiff received pain management treatment from David Gamburg, M.D. and Tami Puncino, NP-C ("treating sources").  On June 24, 2014, Dr. Gamburg signed a Physical Capacities Evaluation form.  (T. 690-694.)  Therein, Dr. Gamburg indicated Plaintiff could sit for one hour in an eight hour day; stand for less than an hour in an eight hour workday; and walk for less than an hour in an eight hour workday.  (T. 690.)  Dr. Gamburg indicated Plaintiff would need to alternate from the sitting position every

hour, could not stand for more than five minutes, and could not walk for more than five minutes. (*Id.*) He checked the box "yes" indicating Plaintiff could bilaterally grasp, he checked the box "no" indicating Plaintiff could not bilaterally push and pull or do fine manipulation. (*Id.*) He checked the box "no" when asked if Plaintiff could use her feet for repetitive movements in operating foot controls. (*Id.*) Dr. Gamburg checked the box indicating Plaintiff could "occasionally" lift and carry up to five pounds and could "never" lift and carry more than five pounds. (T. 691.)[3] He checked the box indicating Plaintiff could "occasionally" bend, but could "not at all" squat, crawl, climb, or reach above shoulder level. (*Id.*) Dr. Gamburg checked the box "total restriction" involving unprotected heights, being around moving machinery, and exposure to dust, fumes, and gases. (T. 692.)[4] Concerning exposure to "marked changes in temperature and humidity", and driving automotive equipment he checked the box "moderate restrictions." (*Id.*)

Dr. Gamburg completed a check box form titled "Pain." (T. 693-694.) Therein he checked the box "yes" for the following questions: does your patient suffer from pain; does this pain interfere with ability to concentrate on job tasks; does this pain interfere with sleep; does this pain interfere with activities of daily living; does this pain interfere with relationships with others; and is there any objective medical evidence which would corroborate the severe pain your patient alleges. (T. 693.) Dr. Gamburg checked the box "no" in response to the question "is there any evidence of malingering." (*Id.*) Dr.

---

[3]     The form provided the following definitions: in terms of an 8 hour workday, occasionally equals 0%-33%, frequently 34%-66%, continuously 67%-100%. (T. 691.)

[4]     The form provided the following options: total restriction, moderate restriction, mild restriction and no restriction. (T. 692.)

Gamburg checked the box "yes" indicating Plaintiff came to his office frequently with a primary complaint of pain and there was a definitive cause or etiology of the complaint. (T. 694.)  Dr. Gamburg wrote that Plaintiff's pain was due to a combination of a motor vehicle accident, degenerative disc disease, and fibromyalgia.  (*Id.*)

In August 2014, the ALJ wrote to Dr. Gamburg seeking clarification and understanding for the basis of the opinion he signed.  (T. 781-770.)  The letter was addressed to Dr. Gamburg and specifically referred to the opinion provided in Exhibit 23F; however, the response letter was not signed by either treating source.  (T. 781, referring to T. 690-694.)  Although not signed, the response received clearly indicated that Dr. Gamburg did not complete the letter nor the medical source statement, and both were most likely completed by Nurse Pucino.  In his letter, the ALJ asked for the provider's "expertise or training" to which the provider wrote "MS, FNP-C."  (T. 781.)  When asked to provide a list and summary of medical records or other evidence considered in formulating the opinion, the respondent, presumably Nurse Pucino, wrote "defer to Functional Capacity Evaluation (FCE)."  (*Id.*)  The ALJ essentially requested that Dr. Gamburg provide support for the limitations provided in the Physical Capacities Evaluation.  (T. 782-783.)  However, in response to each question posed, Nurse Pucino, not Dr. Gamburg, wrote "defer to FCE" or "FCE" and did not cite to any objective observations, testing, or treatment notations.  (*Id.*)

On February 21, 2014, Plaintiff presented for a Functional Capacity Evaluation ("FCE").  (T. 634-655.)  The results of the FCE indicated Plaintiff could "occasional lift" four pounds.  (T. 643.)  Although the FCE provided other testing and levels of impairment in terms of percentages, the FCE did not provide any other specific

functional limitations besides lifting.  In addition, the provider who administered the FCE did not sign the report, nor did Dr. Gamburg.  (T. 655.)

On August 19, 2014, Nurse Pucino wrote a letter to the file.  (T. 770.)  Therein she indicated that Plaintiff requested a note regarding her ability to sit, stating she felt she needed to get up and move around after sitting for thirty minutes.  (*Id.*)  Nurse Pucino noted Plaintiff informed her that she felt the need to lie down every four to six hours for two hours.  (*Id.*)  On September 30, 2014, Nurse Pucino summarized a telephone conversation between herself and Dr. Gamburg for the file.  (T. 767.)  Nurse Pucino indicated that Plaintiff requested a note "regrading her inability to sit for any length of time and her need to get up and move around every 30 minutes or so as well as lying down for up to two hours every 4 to six hours."  (*Id.*)   Nurse Pucino noted that she explained to Plaintiff she was unable to provide a note because she had an FCE, and "we cannot really verify that she needs to move around every 30 minutes or lie down for two hours every 4 to 6 hours."  (*Id.*)

Dr. Gamburg also completed an assessment form at the request of Liberty Mutual.  (T. 695.)  Therein he indicated Plaintiff could not sit, stand, or walk for even an hour in an eight hour day or lift more than five pounds.  (*Id.*)

In weighing the medical evidence in the record, the ALJ afforded the opinions of Dr. Gamburg and Nurse Pucino "very little weight."  (T. 33.)  The ALJ reasoned that the limitations provided were a reflection of Plaintiff's own subjective complaints rather than any independent source; and further, Dr. Gamburg's clinical examinations and objective evidence did not support the opinions.  (*Id.*)  The ALJ noted that Plaintiff testified at the hearing that a "physician's assistant," not Dr. Gamburg completed the form.  (*Id.*)  The

10

ALJ further reasoned that Ms. Pucino's opinion, that Plaintiff was unable to work, was not supported by treatment notations indicating that Plaintiff was able to exercise and showed no clinical evidence of physical impairment that would preclude her from working.  (*Id.*)  Regarding the FCE, the ALJ noted that a doctor did not conduct the evaluation and the evaluation was not signed by Dr. Gamburg.  (*Id.*)

The ALJ also noted that Plaintiff requested a note from Nurse Pucino shortly after her hearing stating that she could not sit for more than thirty minutes.  (T. 32.)  The ALJ concluded that, when considered with contemporaneous notes, Plaintiff was motivated to support her claim for disability.  (*Id.*)

Plaintiff asserts that the ALJ erred in affording less than controlling weight to Dr. Gamburg's opinion.  (Dkt. No. 11 at 3, 4-5 [Pl.'s Mem. of Law].)  Plaintiff argues the ALJ erred in reasoning Dr. Gamburg's opinion was entitled to lesser weight because it was completed by a different provider.  (*Id.* at 3, 5.)  Plaintiff asserts that although the form was completed by a different provider Dr. Gamburg signed the form, thus indicating he reviewed and agreed with the limitations therein.  (*Id.*)  Plaintiff also argues that Dr. Gamburg's opinion was supported by the "objective test," referring to the FCE, and Plaintiff's "persistent subjective complaints."  (*Id.* at 4.)  Plaintiff's argument is not persuasive.

Here, the ALJ properly weighed the medical source opinion signed by Dr. Gamburg and Nurse Pucino.  The ALJ provided good reasons for his weight determination and his determination was supported by substantial evidence in the record.  As the ALJ stated, the limitations provided were not supported by treatment notations or objective evidence.  First, Nurse Pucino noted neither she nor Dr. Gamburg

could provide the specific limitations requested by Plaintiff because they could not verify those limitations.  (T. 767.)  When given the opportunity to clarify and support their opinions, Nurse Pucino defaulted to the FCE report.  (T. 781-784.)  However, an FCE, unlike an MRI or X-ray, is not an objective medical test.  *See Russitano v. Colvin*, No. 6:14-CV-403, 2015 WL 4496383, at *6 (N.D.N.Y. July 23, 2015) ("the existence of the possibility of such subjective control renders the FCE not objective evidence").  Second, the only specific functional limitation provided for in the FCE was a limitation to lifting and carrying four pounds and the FCE was not signed by the person who performed the exam nor was it signed by Dr. Gamburg.  Therefore, notations indicated the providers were unable to provide specific limitations requested by Plaintiff, and the FCE provided little insight and even less support for the treating providers' opinion.  *See Atwater v. Astrue*, No. 10-CV-420S, 2012 WL 28265, at *3 (W.D.N.Y. Jan. 5, 2012), *aff'd,* 512 F. App'x 67 (2d Cir. 2013) (the court found no error in the ALJ's decision to give no weight to treating source's opinion where treating source relied on an FCE which the ALJ determined was not supported by objective medical evidence and where the treating source failed to complete the ALJ's request for information on what diagnostic tests had been conducted and what objective signs led to the treating source's opinion).

The ALJ also properly noted that the treating source opinion was a reflection of Plaintiff's subjective reports and not objective evidence.  (T. 33.)  To be sure, a doctor's reliance on subjective complaints does not undermine his opinion of the claimant's functional limitations. *Green-Younger,* 335 F.3d 99.  However, an ALJ may provide less weight to a doctor's opinion if it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably be less than fully credible.  *Roma v. Astrue*, 468 F.

App'x 16, 19 (2d Cir. 2012); *see Aldrich v. Astrue*, 08-0402, 2009 WL 3165726 at *7

(N.D.N.Y. Sept. 28, 2009) (the ALJ was entitled to provide less than controlling weight

to the opinion of a treating source who relied more on subjective complaints than on

diagnostic or clinical evidence).  Of note, the RFC stated Plaintiff must be afforded the

opportunity to sit/stand at will, which fully accommodated Plaintiff's assertion that she

could not sit for more than thirty minutes at a time.  (T. 29.)  Therefore, the ALJ properly

afforded less than controlling weight to the opinion because it was based largely on

Plaintiff's subjective report.

    In addition, the functional limitations provided in the treating source opinions

were inconsistent with other medical opinion evidence in the record.  For example,

Suntha Polepalle, M.D., conducted an independent medical examination on May 17,

2013.  (T. 728-730.)  Based on her examination and review of the record, she opined

Plaintiff should avoid pushing/pulling/lifting greater than 15 pounds.  (T. 730.)

Consultative examiner, Ted Woods, M.D., opined that based on Plaintiff's report and his

examination, Plaintiff had "moderate limitation for squatting, bending, lifting, and

carrying heavy objects, also for prolonged standing and climbing stairs."  (T. 594.)

    Plaintiff asserts the ALJ erred in affording more weight to Dr. Polepalle over her

treating sources, because her opinion was inconsistent with the "objective" FCE and Dr.

Polepalle examined Plaintiff for less than two minutes.  (Dkt. No. 11 at 3 [Pl.'s Mem. of

Law].)  However, as stated herein, the ALJ properly assessed the results of the FCE.

Further, Plaintiff provides no support for her assertion that Dr. Polepalle spent less than

two minutes examining her.  (*Id.*)  Dr. Polepalle's notation stated that she started her

examination at 10:45, completed her examination at 12:00, and spent one and a half

hours reviewing medical records. (T. 730.) Therefore, Plaintiff's contentions are without merit and the ALJ properly assessed Dr. Polepalle's opinion.

Overall, the ALJ properly afforded less than controlling weight to the opinions provided by Dr. Gamburg and Nurse Pucino. The functional limitations provided in the opinions were not supported by objective evidence in the record and were inconsistent with other medical source opinions. Nurse Pucino clearly indicated that neither she nor Dr. Gamburg could verify Plaintiff's subjective complaints that she could not sit for thirty minutes or that she needed to lay down every few hours. The ALJ afforded Plaintiff's treating providers the opportunity to clarify and support the opinions they did provide; however, instead of relying on personal observations, examinations, and/or objective evidence, Nurse Pucino deferred to the FCE report. The unsigned FCE, which only provided a specific lifting/carrying limitations, did not constitute objective medical evidence to support all of the limitations imposed by the providers.

For the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's weighing of the medical source opinion evidence be upheld.

### B.   RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).

Plaintiff argues the ALJ erred in his RFC determination on two grounds.  First, Plaintiff asserts that the ALJ failed to properly account for Plaintiff's limitations regarding her ability to handle/finger.  (Dkt. No. 11 at 3 [Pl.'s Mem. of Law].)  Second, Plaintiff asserts that the ALJ failed to properly assess the effects of her obesity.  (*Id.*)

The ALJ determined that Plaintiff could "frequently handle and finger with her bilateral upper extremities."  (T. 29.)  In making his determination, the ALJ relied on Dr. Gamburg's observation from June 2012 that Plaintiff had a "slightly weakened grip."  (T. 31, referring to T. 550.)  The ALJ also relied on the examination performed by Dr. Woods which indicated Plaintiff had dexterity and intact grip strength.  (T. 32, referring to T. 593.)

In support of her argument, Plaintiff notes that an EMG test revealed a diagnosis of carpal tunnel syndrome.  (Dkt. No. 11 at 3 [Pl.'s Mem. of Law].)  To be sure, testing conducted on September 24, 2014, indicated "severe right and mild left carpal tunnel syndrome."  (T. 763.)  However, a mere diagnosis of carpal tunnel syndrome does not support greater limitations than imposed by the ALJ.  Here, the ALJ found Plaintiff's carpal tunnel syndrome severe at step two and thoroughly discussed medical evidence in the record regarding Plaintiff's ability to use her hands for fine manipulation at step four.  The ALJ relied on objective medical evidence in the record indicating a "slightly weakened grip" and "intact grip strength" in formulating his RFC determination that Plaintiff could frequently handle and finger.

Of note, the vocational expert testified that Plaintiff's past relevant work consisted of a case worker (DOT 195.107-010) and customer service clerk (DOT 249.262-010). (T. 106-114.)  The occupation of case worker requires occasional handling and

fingering.  DOT 195.107-010.  The occupation of customer service clerk requires frequent handling and fingering.  DOT 249.262-010.  Therefore, even if Plaintiff were restricted to occasional handling and fingering, she could still return to her past relevant work as a case worker.  The ALJ properly relied on substantial evidence in the record that Plaintiff retained the ability to frequently handle and finger and Plaintiff fails to cite evidence to support greater limitations in her ability to handle and finger than accounted for in the ALJ's RFC.

Plaintiff appears to argue the ALJ erred in his assessment of her obesity and asserts that her obesity "exacerbates her pain and symptoms."  (Dkt. No. 11 at 3 [Pl.'s Mem. of Law].)  Plaintiff offers no further support for her argument.  When analyzing a plaintiff's obesity, an ALJ should rely on SSR 02-1p, which explains the process for assessing a claimant's obesity at steps two through five of the sequential evaluation process. *See* SSR 02-1p, 2002 WL 31026506 (Sept. 12, 2002).  At step two, the ALJ should find obesity severe, alone or in combination with other medically determinable impairments if "it significantly limits an individual's physical or mental abilities to do basic work activities."  *Id.* at *6.  At step three, SSR 02-1p provides that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."  *Id.* at *7.  At steps four and five, the ALJ "will consider any functional limitations resulting from the obesity in the RFC assessment."  *Id.* at *9.  However, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments .... [but] will evaluate each case based on the information in the case record."  *Id.* at *7.

Here, the ALJ properly considered Plaintiff's obesity.  The ALJ determined Plaintiff's obesity was a severe impairment at step two and thoroughly discussed her obesity at step four.  (T. 27, 31.)  As the ALJ noted, no doctor provided specific functional limitations based on her obesity, rather her obesity was considered along with her other impairments in formulating his RFC.  (T. 31.)  A provider even stated that Plaintiff's weight was not the primary source of her issues, but her weight "certainly [was] not helping her."  (T. 529.)  Overall, the ALJ properly considered Plaintiff's obesity at each step of the evaluation.

The ALJ's RFC determination was supported by the overall medical evidence in the record, primarily the medical source opinions of Dr. Polepalle and Dr. Woods, treatment notations from Plaintiff's primary care providers, and objective medical evidence.  As stated herein, the ALJ properly weighed the medical source opinion evidence in the record.  Plaintiff fails to show that the ALJ erred in his determination that Plaintiff could frequently handle and finger or that the ALJ erred in his evaluation of Plaintiff's obesity.  Plaintiff does not assert that the ALJ erred in any other aspect of his RFC determination.  Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's RFC determination be upheld.

### C.    Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the

17

credibility of the [plaintiff's] testimony in light of the other evidence in the record."
*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms.  *See* 20 C.F.R. § 404.1529.  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a).  Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effect of those symptoms was not entirely credible.  (T. 34.)  In making his credibility determination, the ALJ took into consideration Plaintiff's daily activities, her treatment, statements made by treating sources, her work history, and her demeanor at the hearing.  (T. 33-34.)

Plaintiff asserts that the ALJ erred in his credibility determination because he erroneously determined that Plaintiff was the primary caregiver for her son, improperly concluded Plaintiff was motivated to support her claim for disability benefits and was seeking evidence to support her claim, and her subjective complaints were in fact supported by Dr. Gamburg's opinion and "the bulk of the medical evidence."  (Dkt. No. 11 at 3, 4 [Pl.'s Mem. of Law].)

Regarding Plaintiff's ability to care for her child, the ALJ concluded that Plaintiff was the primary care giver for her adolescent son given that her husband was at work during the day.  (T. 30.)  The ALJ appears to have overstated Plaintiff's ability to care for her son.  Plaintiff testified at the hearing that her seven year old son could provide for his own hygiene and even prepare meals if her husband was not at home.  (T. 57.)  She further testified that if her husband went out of town her mother stayed with her to help care for her and her son.  (*Id.*)  Throughout the record various provided noted Plaintiff's frustration with her inability to play with, or care for, her son.  (T. 424,537, 710.)  However, any error the ALJ may have made in assessing Plaintiff's ability to care for her son was harmless.  First, Plaintiff's ability to care for her son was only one factor the ALJ considered in his overall credibility analysis.  Second, in reviewing Plaintiff's

activities of daily living, including her role as caretaker for her adolescent son, the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it was inconsistent with other evidence. *Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence."). Therefore, despite the ALJ's apparent misreading of Plaintiff's ability to care for her son, any error was harmless.

Further, Plaintiff's argument that her statements regarding pain and limiting effects of her symptoms were supported by Dr. Gamburg's opinion fails. As stated herein, the ALJ properly assessed Dr. Gamburg's opinion and afforded it little weight. Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

The ALJ also properly noted that Plaintiff appeared motivated to support her claim for disability in her request of her medical providers to opine to specific limitations shortly after her hearing.  The ALJ has discretion to determine the credibility of a plaintiff's allegations so long as he has "explicitly state[d] the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence." *Pardee* v. *Astrue,* 631 F.Supp.2d 200, 220-221 (N.D.N.Y.2009).  A hearing officer is entitled to consider "a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's ... motivation, and the medical evidence in the record." *Id.* at 220 (internal citation omitted).  Further, this Court must show deference to the decision made by the ALJ where it is supported by substantial evidence, even where Plaintiff may have alleged a plausible interpretation that is divergent form that of the ALJ.  *See Sickles v. Colvin*, No. 12-CV-774 MAD/CFH, 2014 WL 795978, at *7 (N.D.N.Y. Feb. 27, 2014).  Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's credibility determination be upheld.

## D.    Step Two Determination

Plaintiff argues that the ALJ "discounts fibromyalgia as a severe impairment" because she only presented to a rheumatologist once.  (Dkt. No. 11 at 3 [Pl.'s Mem. of Law].)  The ALJ determined at step two that Plaintiff's fibromyalgia was a severe impairment.  (T. 27.)  Therefore, Plaintiff's argument is without merit.

## E.    Step Four Determination

At step four the ALJ determined that Plaintiff had the RFC to return to her past relevant work.  (T. 34-35.)  In making his determination, the ALJ relied on vocational expert testimony.  (T. 105-116.)  Plaintiff argues that had the ALJ found her preferred RFC finding, including a limitation on lifting/carrying/pushing/pulling only five pounds, no work would have been available.  (Dkt. No. 11 at 4 [Pl.'s Mem. of Law].)  However, for the reasons provided herein, the ALJ properly determined that Plaintiff retained the RFC to perform a reduced range of sedentary work including the ability to lift and carry no more than 10 pounds at a time and frequently lifting and carrying small objects. Because the ALJ did not err in his RFC assessment, the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment.  *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:          November 20, 2017

William B. Mitchell Carter
U.S. Magistrate Judge